IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAREN WELDIN STEWART, CIR-MI, INSURANCE COMMISSIONER OF THE STATE OF DELAWARE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 12-0532-KD-B |
| CONTINENTAL CASUALTY COMPANY, | ) ) ) ) | |
| Defendant and Counterclaim Plaintiff, | ) ) ) | |
| v. | ) ) | |
| COLTIN ELECTRIC, INC., | ) ) | |
| Counterclaim Defendant. | ) | |

**ORDER**

This action is before the Court on the motion for summary judgment filed by defendant Continental Casualty Company (Continental) and documents in support (docs. 133-134), the response in opposition filed by plaintiff Karen Weldin Stewart, CIR-MI, Insurance Commissioner of the State of Delaware (the Commissioner) (docs. 139, 140) and Continental's reply (doc. 145). Upon consideration and for the reasons set forth herein the motion is DENIED.

I. <u>Findings of Fact</u>[1]

Elkins Constructors, Inc. had a contract with the University of South Alabama on a public

---

[1] The Court has made its determination of facts by "view[ing] the facts and draw[ing] all reasonable inferences in the light most favorable to the nonmoving party." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir.2013). The parties are reminded that the findings of fact at the summary judgment stage may not be the same as the facts determined at trial.

works construction project to build a dormitory. Continental issued the payment bond for Elkins on the project. Coltin Electric, Inc. (Coltin) was an electrical subcontractor. Coltin gave notice to Continental, in September 2011 and May 2012, that it was making a claim against Elkins' payment bond because Elkins had breached the contract and failed to pay. (Doc. 133-7, p. 2)[2]

In August 2012, Coltin filed this action against Continental for payment on Elkins' bond alleging that Elkins failed to pay for work that Coltin performed under the subcontract. Coltin brought one count, a "Payment Bond Claim" against Continental pursuant to Ala. Code § 39-1-1, *et seq.*, also known as Alabama's "little Miller Act". (Doc. 1) Continental filed an answer, defenses, and counterclaim against Coltin. (Doc. 8)

Ullico Casualty Company (Ullico) provided the payment bond for Coltin on the USA dormitory project and other construction projects. As a condition of issuing the bond, Coltin along with other related business entities and two individuals- Susan N. Rodgers and Alan K. Roders - agreed to indemnify Ullico for all claims paid against its bonds and executed a General Indemnity Agreement (GIA) in December 2010. The GIA also included an assignment from Coltin to Ullico of "all claims and causes of action against any parties to any Bonded Contract or against third parties relating to a Bonded Contract." (Doc. 54, p. 7, ¶7.1.4) The GIA gave Ullico the right, in its "sole and absolute discretion to determine whether any Claim under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted, or appealed" and provided that "[t]he exercise of or delay or omission to exercise any right of Surety will not operate as a waiver of such right nor affect any right of Surety to subsequently exercise same." (Doc. 54, p. 5, ¶3.1, ¶3.7) The GIA also gave Ullico "sole discretion" to determine whether Coltin was in

---

[2] Continental does not dispute the fact that these notices were sent or that they were sufficient to meet the statutory notice requirements in Ala. Code § 39-1-1.

default and "sole and absolute discretion" to determine whether or when to exercise its remedies upon default. (Id. at p. 5-6, ¶4.0, ¶5.0)

Later, Ullico and Coltin became involved in lawsuits regarding Coltin's construction projects. On October 13, 2011, Coltin and Ullico executed a separate "Assignment Agreement" wherein the parties expressed their intent "to reaffirm and ratify Ullico's rights under the parties' Indemnity Agreements and provide for the prosecution of the Speegle Claim, the Elkins Claim, and the PBCC Claim." (Doc. 116-1, p. 2) The Assignment Agreement made clear that it was made "[i]n consideration of the promises undertaken by Ullico herein, and in the event such claims are not already conveyed to Ullico by virtue of the parties Indemnity Agreement." (Id.) Ullico agreed that "in its sole discretion and to the extent it deems such action appropriate, feasible, and economically sensible, it will undertake the investigation, preparation, and prosecution of the [claims] subject to the parties' Indemnity agreements and full reimbursement by Coltin and its Indemnitors." (Doc. 116-1, p. 4) Coltin acknowledged that Ullico had the "absolute right and entitlement, in its sole discretion, to prepare, present, prosecute, and negotiate any and all claims, actions, and rights" regarding the claims. (Id., p. 4)

In September 2012, after this action had been filed in August 2012, Coltin, the other indemnitors, and Ullico entered into a Settlement Agreement regarding some of the claims. Ullico had advanced funds to Coltin to be used to complete the bonded projects and pay certain project costs. In consideration, Coltin agreed to cooperate with Ullico in any effort to recover money due to Coltin "on any of the Bonded Projects, specifically including but not limited to" the "known claims" against Elkins. (Doc. 44, p. 10, ¶ 6) Coltin acknowledged that it had executed the GIA, reaffirmed its obligations and liabilities to Ullico, and reiterated that Coltin had assigned to Ullico all rights in "any and all" claims and the proceeds therefrom as part of the

3

GIA. (Id., p. 6, ¶2; p. 10, ¶6)

In March 2013, the Delaware Court of Chancery declared Ullico insolvent and named Insurance Commissioner Stewart as the receiver. In the Chancery Court's Rehabilitation and Injunction Order, the Commissioner was ordered to "take possession and control of and be vested with . . . all of Ullico Casualty's . . . rights of action." (Doc. 33-2) In that regard, on May 16, 2013, the Commissioner moved for substitution as the plaintiff in this action under Rule 25(c) of the Federal Rules of Civil Procedure and alternatively, for intervention under Rule 24(a)(2) or 24(b)(2)(A). (Doc. 44) Neither the Commissioner nor Ullico had given Continental written notice of their claim before the motion for substitution was filed.

In the motion for substitution, the Commissioner argued that Coltin's claims against Continental had been assigned to Ullico as evidenced by the Settlement Agreement (attached as Exhibit A to the motion). Thus the "chose in action" was transferred to the Commissioner as Ullico's receiver in March 2013 by virtue of the Rehabilitation and Injunction Order. Continental opposed substitution under Rule 25(c), which provides for substitution of a party when an interest has been transferred after an action is filed. In response, Continental argued that any substitution should be made under Fed. R. Civ. P. 17, which provides for substitution of the real party in interest at the time an action is filed. (Docs. 57, 60) Continental argued that because Coltin had assigned the Elkins' bond claim to Ullico in October 2011, Ullico was the real party in interest before Coltin filed suit in August 2012, and therefore, the Commissioner as Ullico's receiver should be substituted under Rule 17(c).

On July 16, 2013, the motion for substitution pursuant to Rule 25(c) was granted and the Commissioner was substituted as the plaintiff. (Doc. 66) [3] The Court determined that Coltin was

---

[3] "The style of this action shall be modified to indicate that Karen Weldin Stewart, CIR-MI,

the real party in interest until the right of action that was assigned to Ullico in the GIA was transferred to the Commissioner and it asserted its rights as the receiver. Therefore Rule 25(c), not Rule 17, provided the proper method for substitution. (Id.)

Continental moved the Court to reconsider its decision. Continental argued that the recent discovery of the October 13, 2011 Assignment Agreement was evidence that Ullico exercised its right to succeed Coltin's claims against Continental before this action was filed and therefore, the Court should amend its order to substitute the Commissioner pursuant to Rule 17. (Doc. 116) The Commissioner opposed the motion. (Doc. 125) The Court denied the motion on basis that the new evidence would likely not produce a different result. The Court explained that "Ullico and Coltin agreed in the Assignment Agreement that Ullico would have the 'absolute right' in its 'sole discretion' to determine when and whether to prosecute 'the Elkins claims. . . subject to the parties' indemnity agreements[.]'" (Doc. 127)

II. Conclusions of Law

A. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party raises the assertion "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

Insurance Commissioner of the State of Delaware, the Court-Appointed Receiver for Ullico Casualty Company is the plaintiff, that Continental Casualty Company is the defendant and counterclaimant and that Coltin Electric, Inc. is the counterclaim defendant." (Doc. 66, p. 4)

5

> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The defendants, as the parties seeking summary judgment bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the defendants have satisfied their responsibility, the burden shifts to Perkins, as the non-movant, to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, a "moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal

question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

B. <u>Analysis</u>

Continental moves for summary judgment on basis that neither the Commissioner nor Ullico gave written notice of their claim against the Elkins' bond as required in Ala. Code § 39-1-1(b). Continental argues that the Commissioner cannot rely on the notice given by Coltin, but instead "[s]eparate written notice was a condition precedent to the [Commissioner's] right to pursue the claim." (Doc. 133-7, p. 5) Continental argues that the decision in *Lloyd Wood Construction Co. v. Con-Serv, Inc.,* 285 Ala. 409, 232 So.2d 649 (1970), is dispositive of this issue and mandates dismissal of this action regardless of whether the Commissioner should have been substituted under Rule 17 or Rule 25(c).

Continental also argues again that Coltin had "given up all right, title and interest in the Elkins Claim as a result of assigning it to Ullico" in the October 2011 Assignment Agreement. (Doc. 133-7, p. 3) From this, Continental argues that Coltin was no longer a claimant under the bond statute when it gave the second written notice in May 2012, and thus that notice came from

7

the wrong entity.

The Commissioner argues that *Lloyd Wood* does not apply because the procedural posture is different. Specifically, in *Lloyd Wood*, the surety was added to the complaint as a second plaintiff and the action proceeded to trial with both the principal and the surety prosecuting their respective clams. However, in this action, the Commissioner was substituted as the sole plaintiff to prosecute the same claims against Continental, as did Coltin.

The Commissioner also argues that Continental's third attempt to change the Court's decision to allow substitution under Rule 17 instead of Rule 25(c) should be denied. The Commissioner argues that Continental must obtain this reversal in order to prevail on summary judgment.

As an initial consideration, the Court declines to revisit whether the Commissioner should have been substituted under Rule 17(c). The Court has twice ruled that the Commissioner was properly substituted under Rule 25(c). (Docs. 66, 127)

Continental argues that the Commissioner must give her own written notice and cannot rely upon the written notice given by Coltin. As to whether the notice requirement was met, Alabama's little Miller Act, provides in relevant part, as follows:

> (b) Any person that has furnished labor, materials, or supplies for or in the prosecution of a public work and payment has not been made may institute a civil action upon the payment bond and have their rights and claims adjudicated in a civil action and judgment entered thereon. Notwithstanding the foregoing, a civil action shall not be instituted on the bond until 45 days after written notice to the surety of the amount claimed to be due and the nature of the claim. The civil action shall be commenced not later than one year from the date of final settlement of the contract. The giving of notice by registered or certified mail, postage prepaid, addressed to the surety at any of its places of business or offices shall be deemed sufficient under this section. In the event the surety or contractor fails to pay the claim in full within 45 days from the mailing of the notice, then the person or persons may recover from the contractor and surety, in addition to the amount of the claim, a reasonable attorney's fee based on the result, together

with interest on the claim from the date of the notice.

Ala. Code § 39-1-1(b).

The payment bond at issue states that it "is furnished to comply with Code of Alabama § 39-1-1, and all provisions there shall be applicable to civil actions upon this bond." (Doc. 1, Exhibit A). Even if the statute had not been specifically incorporated into the bond, the notice provision – "a civil action shall not be instituted on the bond until 45 days after written notice to the surety of the amount claimed to be due and the nature of the claim" - as a matter of law, is read into any government contract bond that falls within the little Miller Act. Also, compliance with the provision is a condition precedent to the right of recovery. *United States Fidelity & Guar. Co. v. Couch, Inc.*, 472 So. 2d 614, 616 (Ala. 1985).

However, "[t]he purpose of a payment bond required under the little Miller Act is to shift the ultimate risk of nonpayment from workmen and suppliers to the surety" and "[t]he purpose of the [little Miller] act is to provide security for those who furnish labor and material in performance of government contracts as a substitute for unavailable lien rights,[4] and is liberally construed to accomplish this purpose." *Johnson Controls, Inc. v. Liberty Mutual Ins. Co.*, - - - So. 3d - - -, 2014 WL1874599, *9-10 (Ala. May 9, 2014) (citations and internal quotation marks omitted). Thus, the Court must liberally construe the notice provision to provide security for the Commissioner as the successor-in-interest to Coltin who furnished labor and materials for the USA dormitory project.

---

[4] "Generally, when a person has provided labor or materials or has supplied services on a private construction project, the person is entitled under § 35–11–210, Ala.Code 1975, the mechanic's or materialman's lien statute, to file a lien against the private property and subsequently to foreclose on the property, if not paid for those services." *Johnson Controls,* 2014 WL 1874599, at * 9 (citation omitted). " However, § 35–11–210 does not apply to public property" such as the dormitory project. Id. (citation omitted). Therefore, the Alabama Legislature has provided a remedy – the little Miller Act. *Id.*

In so doing, the Court finds that filing the motion for substitution provided Continental with the requisite written statutory notice. The motion, filed May 16, 2013, set forth that the Commissioner would pursue Coltin's existing claim. Thus, Continental had written notice of the "amount claimed to be due and the nature of the claim" by virtue of the complaint in this action and the Commissioner's motion. The order of substitution under Rule 25(c) was entered 61 days later on July 16, 2013.

In that regard, Rule 25(c) states in relevant part, as follows:

> (c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c).

Since the "action may be continued by . . . the original party unless the court, on motion, orders the transferee to be substituted in the action", *id*., Coltin "continued" as the plaintiff until July 16, 2013, when the Court "ordered the transferee", the Commissioner, "substituted in the action." Nothing in the Rule indicates that the Commissioner was automatically substituted when the motion was filed. Instead, the Rule specifically contemplates an order by the court substituting the transferee for the original party. *See Matter of Covington Grain Co.,* 638 F.2d 1362, 1364 (5th Cir. Mar. 13, 1981)[5] ("Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the [original] action to continue unabated when an interest in the lawsuit changes hands[.]")

Continental relies upon the decision in *Lloyd Wood*. However, the Court finds that it is not dispositive of this action and therefore, summary judgment is due to be denied. In *Lloyd*

---

[5] Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

10

*Wood,* Con-Serv, Inc. (Con-Serv), a subcontractor, sued the contractor Lloyd Wood and its surety Continental Casualty Company on the payment bond under a prior version of the little Miller Act. Con-Serv's surety Aetna Casualty & Surety Co. (Aetna) was added as a plaintiff. Aetna was not substituted for Con-Serv.

In *Lloyd Wood*, Con-Serv and Aetna contended that it was immaterial whether Aetna gave notice as required in the statute because Aetna was partially subrogated to Con-Serv's claims against Lloyd Wood. Con-Serv and Aetna argued that because Aetna had paid suppliers who had furnished materials to Con-Serv which it, in turn, furnished to Lloyd Wood, Aetna had a right to recover from Con-Serv and it became subrogated to Con-Serv's claims against Lloyd Wood. 232 So. 2d at 654. Under Alabama law, Aetna, if it were subrogated, would obtain rights of those suppliers, not the rights of its principal Con-Serv. *Lloyd Wood,* 232 So. 2d at 654-655 ("As to subrogation rights, a surety does not stand in the shoes of the debtor whose performance he assured; rather he takes the position of the creditor who has been satisfied by the surety.")

The court did not admit but assumed that Con-Serv correctly argued that Aetna's interests in the action were based on its subrogation rights. The court explained as follows:

> Appellees cite *Maryland Casualty Co. v. Dupree*, 223 Ala. 420, 136 So. 811 (1931) in support of their position. The *Maryland Casualty Co. v. Dupree* case does hold that a surety on a public contractor's bond has an equity akin to the doctrine of subrogation in money due under the contract. Admitting this as a sound principle of law, but not admitting Aetna was subrogated to Con-Serv here, the fact still remains that Aetna failed to give Any written notice to Continental of the amount and nature of its claim as required by law before a suit could be maintained. Even assuming Con-Serv is correct in its position that Aetna was subrogated, Title 50, s 16, specifically requires written notice of the amount and nature of the claim prior to suit on the bond.

232 So. 2d at 656.

In the Rehabilitation and Injunction Order, the Commissioner was ordered to take control

of Ullico's rights of action. Ullico, as Continental has pointed out, had been assigned all of Coltin's rights of action regarding the Elkins bond claim either by the GIA, the Assignment Agreement or the Settlement Agreement. Ullico had not exercised its discretion to pursue those rights against Elkins or Continental but instead Coltin filed suit against Continental alleging only one count, the "Payment Bond Claim", seeking payment for labor and materials supplied to Elkins at the USA dormitory project. The Commissioner moved for substitution as the plaintiff. When that motion was granted, the Commissioner was substituted for Coltin and stepped into Coltin's shoes to pursue the payment bond claim against Continental. The Commissioner did not exercise any right of subrogation based upon Ullico's having paid persons or entities that supplied materials to Coltin.

IV. Conclusion

Upon consideration and for the reasons set forth herein, the Court finds that Continental is not entitled to judgment as a matter of law. *See McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (having resolved all issues of material fact in favor of the non-movant, the court must "then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts.") (citation omitted). Accordingly, the motion for summary judgment is **DENIED.**

DONE and ORDERED this the 4th day of June 2014.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE