IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAREN WELDIN STEWART, CIR-MI, INSURANCE COMMISSIONER OF THE STATE OF DELAWARE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 12-0532-KD-B |
| CONTINENTAL CASUALTY COMPANY, | ) ) ) | |
| Defendant and Counterclaim Plaintiff, | ) ) ) | |
| v. | ) ) | |
| COLTIN ELECTRIC, INC., | ) ) | |
| Counterclaim Defendant. | ) | |

## ORDER

This action is before the Court on the motion for partial summary judgment filed by defendant Continental Casualty Company (Continental) and documents in support (doc. 135), the response in opposition filed by plaintiff Karen Weldin Stewart, CIR-MI, Insurance Commissioner of the State of Delaware (the Commissioner) (docs. 137, 138) and Continental's reply (doc. 146).[1] Upon consideration and for the reasons set forth herein the motion is **GRANTED** in part.

I. Background

Elkins Constructors, Inc. had a contract with the University of South Alabama on a public

---

[1] Defendant Continental also filed a motion to strike portions of the affidavit of Alan K. Rodgers, CEO for Coltin Electric, Inc., on basis that those portions do not meet the evidentiary requirements of Rule 56(c) of the Federal Rules of Civil Procedure. (Doc. 147) Upon consideration, the motion is DENIED.

works construction project to build a dormitory. Continental issued the payment bond for Elkins on the project. In July 2010, Elkins entered into a subcontract with Coltin Electric, Inc. (Coltin) for electrical work. Elkins failed to pay Coltin for certain materials, equipment, and labor on the project. On May 25, 2012, Coltin submitted a Claim for Additional Compensation against Elkins' Payment Bond. (Doc. 135-2, Affidavit of David Birklebach, Elkins Project Manager; Doc. 135-3, Claim) The parties were unable to resolve the dispute and this action was filed on August 22, 2012 (Doc. 1).

In the complaint, Coltin brought one claim against Elkins' payment bond with Continental. Coltin seeks damages for labor productivity losses in its field work on the project. Coltin attributes those losses to Elkins' mismanagement of the scheduling of sub-contractors and suppliers and its changes to schedules, including instituting a 24-hour schedule, in order to complete the project on time. Coltin alleges that it had to hire additional employees and perform additional work in order to accelerate and complete its work.

Coltin states that it began to accrue the labor productivity losses upon receipt of the amended project schedule on November 16, 2010. (Doc. 1; Doc. 135-1, p. 7) Coltin alleges that it also performed additional work that was beyond the scope of the base contract. Coltin seeks payment of "at least" $804,827.63 against Elkins' bond with Continental.

Continental answered the complaint and counterclaimed against Coltin. (Doc. 132) Continental alleges that Mathes Electric Supply Company, Inc. and Mayer Electric Supply Company, Inc. provided materials to Coltin for the project, Coltin did not pay the suppliers, and they filed a claim and a lawsuit against Continental and other parties for payment for the materials. Continental seeks indemnification for these claims and all costs, damages, expenses and attorney's fees arising from the defense and resolution of these claims, based upon the

indemnification and hold harmless provision of the subcontract between Coltin and Elkins.

Ullico Casualty Company provided the project bond for Coltin. Coltin agreed to indemnify Ullico against any claims, and as security assigned its claims against third parties relating to a bonded contract. After Coltin filed this lawsuit Ullico went into receivership in the state of Delaware and the Commissioner was appointed as the Receiver. The Commissioner exercised Ullico's right to Coltin's claims against Elkins' bond and moved for substitution. The motion was granted and the Commissioner was substituted for Coltin. (Doc. 66)

II. Findings of Fact[2]

During the course of the project, beginning in August 2010, Coltin submitted monthly "Subcontractor's Applications and Certificates of Payment", (payment applications) to Elkins. Along with each application, Elkins required that Coltin and its subcontractors or suppliers execute a release of lien. A form captioned "Release of Lien- Alabama" accompanied or followed the payment applications.

The first payment application was submitted for the period ending August 31, 2010. Melissa Hirmer, an employee of Coltin identified by title as "Accounts Receivable" signed the application in September 2010. Elkins later requested a "lien release to release [the] August payment." Hirmer signed a release of lien for the period ending August 31, 2011, and emailed it to Elkins on October 5, 2010 asking for overnight delivery of the check. (Doc. 146-1, p. 2-3). Coltin received payment in early October 2010. (Doc. 146-1, p. 2, email to Hirmer on October 6, 2010, "Going out today will have tomorrow") In relevant part, the release provides that upon receipt of the amount due for the period ending August 31, 2010, Coltin released and waived any

---

[2] The Court has made its determination of facts by "view[ing] the facts and draw[ing] all reasonable inferences in the light most favorable to the nonmoving party." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir.2013). The parties are reminded that the findings of fact at the summary judgment stage may not be the same as the facts determined at trial.

3

and all liens and claims or rights of lien upon or against the project bonds. (Doc. 146-3)

The second payment application was submitted for the period ending September 30, 2010. Hirmer signed the application on September 24, 2010. (Doc. 146-1, p. 20-23) On November 23, 2010, Elkins' Project Accountant Linda Anderberg, emailed Hirmer stating that "[i]n order to release this check . . . I still am in need of your waiver" and attached a release for Coltin to execute. (Doc. 146-1, p 20-21). That same day, Alan K. Rodgers, identified as the CEO of Coltin, signed the release of lien for the period ending September 30, 2010 (Doc. 146-1, p. 24). The release was emailed to Elkins. (Doc. 146-1, p. 20, email with attachment) In the release, in relevant part, Coltin acknowledged payment received through August 31, 2010 and released and waived any and all liens and claims or rights of lien upon or against the project bonds through that date. Also, the release provided that upon receipt of payment for the period ending September 30, 2010, Coltin released and waived any and all liens and claims or rights of lien upon or against the project bonds for the period ending September 30, 2010. (Doc. 146-4, Doc. 146-1, p. 24)

The third application for payment was submitted for the period ending October 31, 2010. Hirmer signed the application on November 3, 2010. (Doc. 146-5) It appears that no release was submitted. (Doc. 146-2, Birkelbach Affidavit ¶ 10)

The fourth application for payment was submitted for the period ending November 30, 2010. Hirmer signed the application on November 24, 2010. Hirmer signed the release on January 20, 2011. In the release, in relevant part, Coltin acknowledged payment received through October 31, 2010 and released and waived any and all liens and claims or rights of lien upon or against the project bonds through that date. Also, the release provided that upon receipt of payment for the period ending November 30, 2010, Coltin released and waived any and all

liens and claims or rights of lien upon or against the project bonds for the period ending November 30, 2010. (Doc. 146-6)

The fifth application for payment was submitted for the period ending December 31, 2010. Hirmer signed the application on December 22, 2010. Hirmer signed the release on February 7, 2011. (Doc. 146-1, p. 9) In the release, in relevant part, Coltin acknowledged payment received through November 30, 2010 and released and waived any and all liens and claims or rights of lien upon or against the project bonds through that date. Also, the release provided that upon receipt of payment for the period ending December 31, 2010, Coltin released and waived any and all liens and claims or rights of lien upon or against the project bonds for the period ending December 31, 2010. (Doc. 146-7)

In sum, Hirmer executed releases for payment applications 1, 4, and 5, there was no release submitted for payment application 3, and Rodgers executed the release for payment application 2. In reliance on the releases signed by either Hirmer or Rodgers, Elkins made payments to Coltin for these payment applications. (Doc. 146-2, Birkelbach Affidavit, ¶¶ 10-11)

The sixth application for payment was submitted for the period ending January 31, 2011. Hirmer signed the application on January 20, 2011. (Doc. 146-8, Doc. 146-1, p. 26-33 (email)) Coltin sought payment of $82,045.96. It appears that no release was submitted at that time. (Doc. 146-1, p. 26)

The seventh application for payment was submitted for the period ending February 28, 2011. Hirmer signed the application on February 25, 2011. (Doc. 146-9, Doc. 146-1, p. 11, email from Hirmer to Anderberg) Coltin sought payment of $64,766.25. (Doc. 146-9) That same day, Hirmer signed a release for the period ending February 28, 2011, which was submitted with the payment application. The release included the amount due from the sixth payment application -

5

$82,045.96 - for a total of $146,812.20 and sets forth, in relevant part, as follows:

> 1. The undersigned acknowledges receipt of aggregate payments of $236,690.07 (amounts received to date), representing all payments due the undersigned through 12.31.1[0] (*sic*) (effective date of last paid application for payment), for all labor, materials, equipment or services theretofore furnished for the referenced Project. The undersigned does hereby release Owner and its Lender and Elkins Constructors, Inc., and does hereby fully release and waive any and all liens and claims or rights of lien upon or against the Project Funds and Project Bonds, the land whereon is situated the construction Project and all buildings or structures thereon, for all labor, materials, equipment or services furnished through the aforesaid effective date of the last paid application for payment.
>
> 2. Subject to receipt of the current amount due of $146,812.20, for the period ending 02.28.11 (effective date of current application for payment), the undersigned does release Owners and its Lender and Elkins Constructors, Inc., and does hereby fully waive and release any and all liens and claims or rights of lien upon or against the Project Funds and Project Bonds, the land whereon is situated the construction Project and all buildings or structures thereon, for all labor, materials, equipment or services furnished through the aforesaid effective date of the current application for payment.

(Doc. 135-5, p. 10; Doc. 146-1, p. 16)

On the morning of April 20, 2011, Anderberg emailed Hirmer that funds had been released for February and that she had "two checks for you" since Anderberg still did not have the "$10.00 release from Rexel [a sub-sub-contractor] to release your [January] check." (Doc. 146-1, p. 34) At this point, Anderberg was holding a check dated March 30, 2011, in the amount of $82,045.96 for the January payment and a check dated April 19, 2011, in the amount of $64,766.25 for the February payment. (Doc. 135-6; 135-7) With her email, Anderberg provided two release forms for January and February. (Doc. 146-1, p. 36-37) These two forms contained a release and waiver of any and all liens and claims or rights of lien against the project bonds.

Later that day, Anderberg emailed Hirmer stating "I didn't get your [January] waiver yet??" to which Hirmer replies: "Attached is our waiver thru 01.31.11". (Doc. 146-1, p. 39) The release (waiver) attached was signed by Rodgers on April 21, 2011. (Doc. 146-1, p. 40) This

6

release was not the form sent by Anderberg and did not release or waive any liens and claims or rights of lien against the Project Funds or the Project Bonds. Coltin changed the form of the release submitted for payment. (Doc. 138-1, Rodgers Affidavit) The release submitted on April 21, 2011 for the period ending January 31, 2011, sets forth in relevant part as follows:

> 1. The undersigned acknowledges receipt of aggregate payments of $235,690.10 (amounts received to date), representing all payments due the undersigned through 12/31/2010 (effective date of last paid application for payment), for all labor, materials, equipment or services theretofore furnished for the referenced Project. The undersigned does hereby release and waive any and all liens and rights of lien upon or against the land wherein the Project is situated and all buildings or structures thereon, for all labor, materials, equipment or services furnished through the aforesaid effective date of the last paid application for payment.
>
> 2. Subject to receipt of the current amount due of $82,045.96, for the period ending 01/31/2011 (effective date of current application for payment), the undersigned does release any and all liens or rights of lien upon or against the land whereon the Project is situated and all building or structures thereon, for all labor, materials, equipment or services furnished through the aforesaid effective date of the current application for payment.

(Doc. 135-4, p. 7; Doc. 146-1, p. 40)

The check for January was sent to Coltin and cleared the bank on April 25, 2011. (Doc. 135-6) According to David Birkelbach, Elkins' Project Manager, Elkins did not notice the change in the form and issued payment to Coltin. (Doc. 146-2, p. 4, Birkelbach Affidavit)

On May 5, 2011, Anderburg emailed Hirmer stating "My records show that I need the following waivers to be able to release your Feb. check: Your waiver (attached)", waivers from suppliers and vendors, and "Once I have these I can release your [February] check." (Doc. 138-1, p. 11-12) On May 5, 2011, Rodgers[3] executed a release for the period ending February 28, 2011,

---

[3] Rodgers stated that Elkins "rejected the Hirmer Release and refused" to pay until he "personally executed a new release in substitution of the Hirmer Release". (Doc. 138-1, p. 2)

7

which was sent to Anderberg. (Doc. 138-1, p. 7; Doc. 146-1, p. 45)  As with the January payment application, this release did not contain a release and waiver of liens and claims or rights of liens against the payment bond.  According to Birkelbach, Elkins did not know that it "had already received the executed Release from Coltin which conditionally released Coltin's claims and liens through February 28, 2011[.]"  (Doc. 146-2, p. 4)

      The check for February was sent to Coltin on May 6, 2011 by overnight delivery (doc. 138-1, p. 15-16) and the check cleared on May 10, 2011. (Doc. 135-7)

      The eighth application for payment had been signed by Hirmer and submitted on March 18, 2011, for the period ending March 31, 2011. (Doc. 146-10)  On May 6, 2011,[4] Anderberg emailed Hirmer that Elkins had been paid for March and that she needed Coltin's waiver and release and the waivers for the suppliers, to release the March payment to Coltin. (Doc. 138-1, p. 14)   Rodgers signed the release for March on June 3, 2011 and sent it to Elkins. (Doc. 146-10, p. 8)  The release did not release and waive Coltin's rights and claims against the Payment Bond.

      On June 6, 2011, Anderberg emailed Crystal Standland at Coltin: "Call me please to discuss – there is language that is missing from the [March] waiver that you sent me, that is why I had to send you another one." (Doc. 138-5, p 3)  Rodgers responded to Anderberg:  "We are a bit confused that the language on the waiver is not acceptable.  We have submitted the waiver for January and February with no problem on payment.  Why is this a problem now?" (Doc. 138-5,

---

Rodgers relies upon the email from Anderberg and asserts that she asked for a new release. In that regard, Anderberg wrote "My records show that I need the following waivers to be able to release your Feb check: Your waiver (attached)  - AND - $10.00 thru 1/31/11 from" four suppliers.  She then wrote "Once I have these I can release your check." (Doc. 138-1, p. 11)
[4] Later that day, Hirmer emailed her coworkers that the February check was expected on Monday, they should pay all vendors and get their lien releases so that Coltin could be paid for March, and to "make sure to use the correct lien release for Coltin . . . DO NOT USE THE ONE ELKINS SUPPLIES[.]"  (Doc. 138-1, p. 13) (emphasis in original)

8

p. 3) Anderberg responds: "The Jan and Feb waivers should not have been accepted and I just noticed it. The issue is that all subcontractors should be signing the waiver that you have been signing until very recently." (Doc. 138-5, p. 2)

On June 7, Anderberg emails Birkelbach: Attached is the PDF version of the Lien Waiver on the USA Housing job. Please be advised that I have all of the other waivers I need in order to release the March check . . ." (Doc. 138-5, p. 2). Birkelbach then emails the lien waiver to Rodgers writing "Please sign the attached lien waiver. This waiver is required by Elkins Constructors for all subcontractors, in order to release payment. We will not be able to release any further payments to Coltin until we have this waiver signed as well as all sub waivers in. . . . If you have any additional questions please contact me. . ." (Doc. 138-5, p. 1)

On June 8, 2011, Bill Stinson at Elkins sent Rodgers a revised release for payment application 8 for March 2011, for Rodgers to sign. Stinson wrote as follows:

> Alan,
>
> Here is the revised waiver we discussed earlier today. We added item no. 4 to address your concerns over waiving your right pertaining to your claim for schedule delays. If you are in agreement that this protects your rights for your claim then sign and return and we will send you the $132k we owe you. I understand you made a request for early release of the next pay application of approximately $93k. If you will send us the same type or waiver for that amount and if we have all of your other sub waivers and the proper documentation we will send you that check as well.
>
> Call if you still have questions or concerns.
>
> Thanks
>
> Bill

(Doc. 138-8, p. 1; Release of Lien at p. 2).

Rodgers revised the proposed lien waiver, executed the revised version on June 21, 2011,

and sent it to Elkins that day, as explained below:

> Joe and Brett, [5]
>
> Attached please find an executed lien waiver that includes revisions we believe address both parties' concerns regarding the payment process. Pursuant to Elkins' request, we have included with the waiver an attachment that lists the issues for which Coltin is reserving its rights. We have also included a red-lined version of the release which shows all of the revisions we have made to the form previously forwarded by Elkins.
>
> We trust that the attached will be sufficient to release our pending funds on the Project. Please advise when we can expect payment.
>
> Thanks,
> Alan K. Rodgers

(Doc. 138-6, p. 2)

In the "executed lien waiver" Rodgers acknowledged receipt of aggregate payments in the amount of $383,502.30 "representing all payments to [Coltin] through 02/28/2011" and released and waived any and all liens and claims or rights of lien upon or against the project bonds. (Doc. 138-1, p. 8) The release also provided that upon receipt of "$301,188.84 for the period ending 05/31/2011" Coltin would waive and release any and all liens and claims or rights of lien upon or against the project bonds. (Id.) The release references "Progress Payment March April May 2011" (Id.)

In paragraph 4, Coltin and Elkins acknowledged that "all rights pertaining to the claims asserted by Coltin Electric, Inc., related to the issued identified on Attachment A are reserved." (Id.) Attachment A begins with the phrase "Payment Application Nos. 8, 9, 10 dated March, April and May 2011" (Doc. 138-1, p. 9). The attachment then identifies "Reserved or Pending Claims / Issues", in three separate paragraphs. In paragraph one "Non-payment/untimely

---

[5] The email was sent to Joe Newell and Brett D? "@elkinsconstructors.com".

10

payment. . ." claims are reserved. In paragraph two, reserves claims regarding ten separate

"Pending Change Order Proposals". Paragraph three, sets forth as follows:

> 3. All additional performance costs and time (including those of Coltin Electric's subcontractors and suppliers) including but not limited to delay, acceleration, material or labor escalation, additional and/or diluted supervision, overtime, loss of productivity, etc., related to project impact and issues enumerated in the following documents:
>
>   a. Notice of Impact on Schedule dated 11/24/2010
>   b. Revised Look Ahead Schedule Impact dated 01/07/2011
>   c. Notice of Schedule Cost Impact dated 03/18/2011
>   d. Request for Extension of Contract Time dated 04/07/2011
>   e. Project Completion Concerns dated 04/28/2011
>   f. Safety and Security of Electrical Systemsn -5/12/2011
>   g. Claim for Additional Compensation dated 05/26/2011
>   h. 24 Hour Work Schedule dated 06/06/2011
>   i. Response to 120 Hour Notice 06/20/2011
>   j. Any related email correspondence during the referenced time frame of November 2010 through June 2011

(Doc. 138-1, p. 9-10).

On June 23, 2011, Birkelbach responds that Elkins will release Coltin's March payment that day upon verification of all sub-subcontractor waivers for February, that Elkins will release Coltin's April payment upon receipt of all sub-subcontractor waivers for March. Birkelbach also stated as follows:

> We will continue to work with you to resolve the waiver issue between Elkins and Coltin, and release your May funds once we have been funded by the Owner and finalized the waiver language between Elkins and Coltin.

(Doc. 138-1, p. 26) Ultimately, Elkins made payments to Coltin for the periods of March and April[6] without lien releases for those payment periods. (Doc. 138-1, Rodgers Affidavit, ¶ 12).

---

[6] The ninth application for payment was signed and submitted by Hirmer on April 20, 2011 for the period ending April 30, 2011. No release was provided with this application. (Doc. 146-11)

11

Later that day, Rodgers responded to Birkelbach:

I agree with this plan insofar as Coltin reserves and retains all rights to claims previously sent to Elkins attention. In addition, if terms are not reached on a waiver we expect the May and all future payments to be sent to Coltin expeditiously and according to State law.

(Doc. 138-1, p. 26)

On June 24, 2011, Birkelbach responded:

The March Check was over-nighted to your office today. We will release the April payment, as well, as indicated below. Elkins will release the May, and all subsequent payments as per the terms of our executed subcontract with Coltin.

(Doc. 138-1, p. 25)

On October 12, 2011, Rodgers emailed Joe Newell at Elkins as follows:

Joe,

I am sitting here with Matt Welch and we are wondering if this document is the one that was last agreed upon by yourself and Fred Mendicino.

Alan K. Rodgers

(Doc. 138-1, p. 17) The "document" referenced is the release signed by Rodgers on June 21, 2011.

Coltin was not paid for the May payment application. (Doc.138-1, p. 4)

II. Conclusions of Law

A. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party raises the assertion "that a fact cannot be or is genuinely disputed", the

party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The defendant, as the parties seeking summary judgment bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the defendant has satisfied its responsibility, the burden shifts to the plaintiff, as the non-movant, to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970). However, a "moving party is entitled to summary judgment if

the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted).

B. <u>Analysis</u>

Continental argues that it is entitled to judgment as a matter of law for all claims for damages incurred on or before February 28, 2011. (Doc. 135) Continental argues that Coltin signed a release effective through February 28, 2011 in conjunction with payment application #7 and that the release contained an unambiguous release of Elkins and a waiver and release of Coltin's claims against the project bond for all labor, materials equipment or services that Coltin furnished through February 28, 2011. Continental argues that the release was conditioned upon receipt of payment of $146,812.20, that Coltin was paid this sum in two payments, and Coltin accepted the payments, which effectuated the waiver and release.

14

1) <u>Hirmer's authority</u>

The Commissioner argues that the February 28, 2011 release is not effective because Hirmer did not have authority to sign on behalf of Coltin. The Commissioner relies upon Rodgers' affidavit testimony that Hirmer did not have authority. (Doc. 138-1, ¶¶ 5-6) In reply, Continental argues that Hirmer had actual or apparent authority to execute the February 28, 2011 release and therefore, bound Coltin and hence the Commissioner, to its terms.

Under Alabama law, apparent authority is implied where the principal permits the agent to appear to a third person to have the capacity to act on behalf of the principal. Such apparent authority "rests upon the principle of estoppel, which forbids one by his acts to give another an appearance of authority which he does not have and to benefit from such misleading conduct to the detriment of one who has acted in reliance upon such appearance." *McLemore v. Hyundai Motor Mfg. Ala., LLC,* 7 So.3d 318, 329 (Ala.2008) (internal quotations omitted). On motion for summary judgment, "a party relying on an apparent agency must 'show that he was misled by the appearances relied upon. It is not enough that he might have been ... so misled. It must also appear that he had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough.' " *McLemore,* 7 So.3d at 329 (quoting *Brown v. St. Vincent's Hosp.,* 899 So.2d 227, 241 (Ala.2004)).

Hirmer was employed as Coltin's Account Receivable clerk and in that capacity signed and certified all nine payment applications and four of the release of lien forms. Hirmer communicated with Elkins' Project Accountant Anderberg in regard to processing the payment applications, providing the release of lien forms, and obtaining payment for Coltin. Elkins relied upon Hirmer's authority to release the liens and claims and issued payments to Coltin. As the

principal, Coltin accepted these payments from Elkins and never informed Elkins that Hirmer did not have authority to sign the releases. Thus, Elkins had reasonable cause to believe that Hirmer had authority to act on behalf of Coltin. Accordingly, the Court finds that there is no issue of material fact that Hirmer had apparent authority to sign the releases on behalf of Coltin.

    2) <u>Payment through December 31, 2010</u>

There is no dispute of fact that the releases signed by Hirmer and submitted with payment applications 1, 2, 4, and 5 contained the waiver and release of liens and claims against Elkins' payment bond. The parties do not dispute that Elkins paid Coltin based upon these releases. The Court having now determined that Hirmer had apparent authority to bind Coltin to the releases submitted with payment applications 1, 4, and 5, and that payment has been made as to those payment applications as well as payment application 2 for which Rodgers signed the release and payment application 3 for which there does not appear to be a release, the Court finds that summary judgment is entered in favor of Continental as to Coltin's liens and claims or rights of liens against the payment bond that arose before December 31, 2010. (Doc. 113-1, Release of Lien-Alabama signed February 7, 2011, for payment application 5 covering the period through December 31, 2010)

    3) <u>The effect of the February 28, 2011 release</u>

Continental argues that Coltin's acceptance of Elkins' payments for work, labor and materials furnished in January and February 2011, effectuated and made unconditional the waiver and release terms of the February 28, 2011 release which accompanied payment application #7. Continental argues that summary judgment should be granted in its favor as to all claims and liens incurred before February 28, 2011.

The Commissioner argues that the releases dated April 21, 2011 and May 5, 2011

16

supersede and replace the release signed on February 25, 2011, because Elkins accepted those releases and made payment based on them. The Commissioner argues that the parties continued to negotiate a release form that preserved Coltin's liens and claims and rights of lien against the project bond and that the release signed in June 21, 2011, superseded all prior releases for the January and February period.

This issue of the effect that should be given to the February 28, 2011 release in light of the releases signed on April 21, 2011, May 5, 2011, and June 21, 2011, and the issue of whether Elkins was induced to accept the release because of fraud or misconduct on the part of Coltin, was discussed at the final pretrial conference. By separate order, the parties have been ordered to provide additional briefing. Therefore, the Court reserves ruling at this time.

4) <u>Ambiguity of the release</u>

Continental argues that the February 28, 2011 release is supported by consideration, unambiguous in meaning, and should be given effect according the intent of the parties. Continental argues that the intent of the parties to release and waive claims against Elkin and the project bonds for all labor, materials, equipment or services furnished through February 28, 2011, can be ascertained from the plain and clear meaning of the express terms of the release.

The Commissioner argues that the February 28, 2011 release is ambiguous, that the true meaning is a question of fact, and therefore, summary judgment should be denied. In support, the Commissioner argues that its interpretation of the release indicates that the subject matter is restricted to a release of liens while Continental's interpretation implies that the release addresses both claims and liens.

When interpreting a contract, the "court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the

17

agreement clearly state." *Turner v. West Ridge Apartments, Inc.,* 893 So.2d 332, 335 (Ala.2004). If the contract is unambiguous, then the court does not look beyond the plain language to speculate the subjective expectations of the parties or their intent. *Harbison v. Strickland,* 900 So.2d 385, 391 (Ala.2004). An ambiguity exists if the contract is capable of more than one meaning. *Voyager Life Ins. Co. v. Whitson,* 703 So.2d 944, 948 (Ala.1997).

The Court finds that the release is not capable of more than one interpretation, and therefore, is not ambiguous. The clear and plain meaning is that the parties intended to release and waive any and all liens and claims or rights of lien upon or against the project bonds, conditioned upon payment for labor, materials, equipment or services provided to Elkins.

The Commissioner argues that the release is ambiguous because it could be read to release only liens and not claims. However, that interpretation is not consistent with Alabama law. Generally, a mechanic or materialman who provides labor or materials on a private construction project may file a lien against the private property and follow the procedures under Ala. Code § 35-11-210 to obtain payment. *Johnson Controls, Inc. v. Liberty Mutual Insurance Co.*, - - - So. 3d - - -, 2014 WL 1874599, *10 (Ala. 2014). However, that statute does not apply to public property. Therefore, Alabama's little Miller Act, Ala. Code. § 39-1-1, was enacted to provide a remedy to ensure that materialmen receive payment for labor or materials supplied on a public works project. *Id.* The statute requires contractors to provide a payment bond to act as security for the suppliers of labor or materials on public contracts. Thus, the mechanic or materialman in that circumstance may file a claim against the payment bond.

The Commissioner's interpretation that the release applies only to waive and release liens against the property and not claims against Elkins' payment bond would render the release meaningless. Coltin and other subcontractors cannot file liens against public property so there is

no reason to release and waive a right they do not have. If the release does not waive and release claims against Elkins' performance bond and payment bond, then there would be no reason for Elkins to require the release.

IV. Conclusion

Upon consideration and for the reasons set forth herein, the motion for partial summary judgment is GRANTED, in part, at this time.

DONE and ORDERED this the 25th day of June 2014.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE