IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAREN WELDIN STEWART, CIR-MI, INSURANCE COMMISSIONER OF THE STATE OF DELAWARE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 12-0532-KD-B |
| CONTINENTAL CASUALTY COMPANY, | ) ) ) ) | |
| Defendant and Counterclaim Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| COLTIN ELECTRIC, INC., | ) ) | |
| Counterclaim Defendant. | ) | |

# ORDER

This action is before the Court on the motion for partial summary judgment filed by defendant Continental Casualty Company (Continental) and documents in support (doc. 135), the response in opposition filed by plaintiff Karen Weldin Stewart, CIR-MI, Insurance Commissioner of the State of Delaware (the Commissioner) (docs. 137, 138) Continental's reply (doc. 146), the supplemental brief filed by Continental (doc. 171) and the supplemental brief filed by the Commissioner (doc. 176). Upon consideration and for the reasons set forth herein the motion is **GRANTED** as follows:

The issue before the Court is whether Coltin Electric, Inc. (Coltin) released its claims for additional compensation for work performed prior to March 1, 2011. The facts were previously set forth in detail in the Court's June 25, 2014, order on Continental Casualty Company's

(Continental) motion for partial summary judgment. (Doc. 169)   In sum, Elkins Constructors, Inc., (Elkins) required Coltin to release any liens and claims against the project funds and project bonds in return for monthly progress payments.  The requirement for this release was pursuant to the Subcontract Agreement between Elkins and Coltin.  Specifically the subcontract provides: SUBCONTRACTOR shall provide, in a form satisfactory to CONTRACTOR, partial lien or claim waivers….  Such waivers shall be a strict condition precedent to payment." (Doc. 1-2, p. 5, ¶10.7)

Prior to February 28, 2011, Coltin submitted six payment applications along with four releases.  Both the payment applications and releases were on forms provided by Elkins to Coltin.   Elkins issued payments for the first five applications.

The seventh payment application and release were submitted for work completed through February 28, 2011.  Again, the submissions were on the Elkins' forms.  However, prior to paying the sixth (January) and seventh (February) payment applications, Elkins re-sent two release forms for the January and February application.

Instead of signing the Elkins release again, Coltin revised the release form and returned it for the sixth and seventh payment application.  The altered release waived liens but did not waive Coltin's right to claims against the project funds and project bonds.  There is no evidence that Elkins was aware that Coltin had unilaterally altered the acceptable release.  Rather, the evidence, in the form of emails between Coltin and its lawyer, indicates that the slight alteration was made in such a manner as to hopefully get it past Elkins without notice.  The plan worked and Elkins paid the sixth and seventh payment applications.  However, when Coltin sent the altered release for the eighth payment, Elkins noticed the change and refused to issue payment since the release was not in a form acceptable to Elkins.

There are no mitigating facts to support any finding other than the altered Coltin release is ineffective for lack of mutual assent by Elkins.[1] The subcontract between Elkins and Coltin clearly states that the release will be in a form acceptable to Elkins. Elkins presented the acceptable release and indicated that Coltin needed to sign that release in order to receive payment. Coltin did not sign the acceptable release. Elkins paid the applications on the reasonable belief that Coltin had signed the release it sent. Coltin prompted this belief by submitting a form that appeared to be the one Elkins had sent.

The Court finds distinguishable the line of cases that would hold Elkins responsible for the consequences of failing to read the altered release before making payment. Specifically, this is not a situation where Elkins signed a contract without reading its terms. Elkins authored the acceptable release, and pursuant to the subcontract, Coltin was required to sign that release in order to get the progress payment. Moreover, Coltin had signed the acceptable release on four previous occasions. Coltin's altered releases for the sixth and seventh payments are ineffective since there is no evidence that Elkins consented to the alteration.

This leaves the February Hirmer release. As there was no valid amendment to this release (or novation), the release, according to its terms, became effective upon payment of the January and February 2011 payment applications. Accordingly, partial summary judgment is GRANTED for any claim for additional compensation for work completed before March 1, 2011.

DONE and ORDERED this the 13th day of July 2014.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

[1] There are no facts to support Rodgers' conclusory statement in his affidavit that Elkins rejected Hirmer's February release because Elkins wanted Rodgers' signature.